IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RAYMOND ROMIG** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: |
| | ) | |
| **MONTGOMERY COUNTY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | **INJUNCTIVE RELIEF** |
| **Defendant.** | ) | **REQUESTED** |

## SECOND AMENDED COMPLAINT

Plaintiff, Raymond Romig, files this Second Amended Complaint against named Defendant and alleges violations of his Fourteenth and Eighth Amendment rights, supporting those claims with the facts alleged below.

## INTRODUCTION

1.

Raymond Romig files this Complaint for violations of his constitutional rights arising from the Animal Services Division of the Montgomery County Police Department's seizure of Mr. Romig's 102 chickens on November 22, 2019.

## JURISDICTION AND VENUE
2.

This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. This Court has subject matter jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3),

and supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and because the defendant resides in this District.

**PARTIES**

4.

Plaintiff Raymond Romig is a citizen of Silver Spring, Maryland, and is subject to the jurisdiction of this Court.

5.

Defendant Montgomery County, Maryland is a municipal governmental entity created and authorized under the laws of Maryland. It is authorized by law to fulfill its police and animal regulatory functions through the Montgomery County Police Department (Animal Services Division).

6.

Montgomery County, Maryland can be served by conducting service of process on County Executive Marc Elrich, Executive Office Building, 101 Monroe Street, 2nd Floor, Rockville, Maryland 20850.

**RELEVANT FACTS**

A. **The applicable state and county statutes authorizing seizure and destruction of animals**

7.

Maryland Criminal Code section 10-606 prohibits aggravated cruelty to animals. Section 10-608 also prohibits animal cruelty to animals and specifically prohibits possessing instruments of cockfighting.

**8.**
Maryland Criminal Code section 10-615(b)(1) permits an officer or other public official to seize an animal if necessary to protect the animal from cruelty.

**9.**
Montgomery County Code, Chapter 5, section 301(c)(1) also permits an animal control officer to seize animals in order to enforce animal cruelty laws.

**10.**
Further, Montgomery County Code, Chapter 5, section 301(c)(2) permits Montgomery County to destroy an animal if the Montgomery County Animal Matters Hearing Board has ordered the animal destroyed or if the Director of the Animal Services Division, an animal control officer, or the Board finds that destruction of the animal is necessary to prevent an immediate threat to public health or safety.

**11.**
Animal "Cruelty" is defined in the Maryland Criminal Code with a one sentence definition as "the unnecessary or unjustifiable physical pain or suffering caused or allowed by an act, omission, or neglect."

**12.**
Neither the Maryland Criminal Code nor the Montgomery County Code sufficiently define cruelty to animals to guide law enforcement officers' decisions

and limit their discretion, nor to place an animal owner on notice as to what conduct is prohibited.

**13.**

Except in the case of a "farm animal" (which is an undefined term), neither the Maryland Criminal Code nor the Montgomery County Code require that a veterinarian determine whether an animal's health or welfare is threatened before an animal control officer decides that an animal is being cruelly treated and may seize the animal.

**14.**

The Montgomery County Code, Chapter 5, section 301, does not require that an animal owner be afforded a hearing before animals seized from the owner are euthanized or destroyed.

**B. The seizure and destruction of Mr. Romig's animals**

**15.**

On November 18, 2019, Animal Services Officer Angel Ricketts was making a dog call north of Burtonsville. Officer Ricketts spotted individual rooster cages on another property in the area, a small farm located at 3801 Bell Road, Burtonsville, MD 20866.

**16.**

The owner of the small farm, Mr. Romig, who lived several miles away, agreed to show Officer Rickets around the property.

**17.**

Two days later, on November 20, 2019, Officer Angel Ricketts applied for a search warrant for the premises and curtilage of 3801 Bell Road, Burtonsville, MD 20866.

**18.**
In the Application for Search Warrant of 3801 Bell Road, Officer Ricketts stated that on November 18, 2019, "while responding to an unrelated incident [she] observed violations at a property located at 3801 Bell Road."

**19.**
In the Application, Officer Ricketts stated that on November 18, 2019 she entered the property at 3801 Bell Road, together with Mr. Romig, and that Mr. Romig showed officers where the birds and dogs were kept around the property.

**20.**
Officer Ricketts observed several factors which were evidence of raising chickens for breeding purposes which she claimed indicated animal cruelty.

**21.**
Officer Ricketts has served as an Animal Services Officer since January of 2013.

**22.**
Upon information and belief, Officer Ricketts has never received any training, or had any experience with chickens or any type of bird.

**23.**

Upon information and belief, Officer Ricketts has never received any training, experience, or knowledge related to cock fighting or other abuse or mistreatment of chickens.

**24.**
Specifically, Officer Ricketts "observed many caged and uncaged birds on the property" and that "[t]he property appeared to be unkept" with "overgrowth and debris littered throughout the perimeter of the property."

**25.**
She also "witnessed birds at the rear of the property without proper shelter" and "multiple single cage units on the property that house individual roosters which is indicative of the housing used in cock fighting establishments."

**26.**
Multiple single-cage units are used by people raising roosters for reasons other than cockfighting. As persons with expertise in the field of raising chickens would note, such housing of chickens is consistent with raising healthy chickens in most contexts, and that roosters are often separated because their natural instinct is to fight with each other if left together.

**27.**
Officer Ricketts "observed multiple roosters with combs and wattles removed…".

**28.**

Officer Ricketts claimed that removing combs and wattles "is a practice used only for cock fighting to protect the birds from injury when they are used in a fight. There is no legitimate agricultural purpose for removing comb and wattles."

**29.**
This practice, referred to as "dubbing," is actually required by both the American Poultry Association and the American Bantam Association in order for chickens to be shown at one of their sponsored events. Dubbing is not a malicious practice but instead offers some benefits in maintaining the health of male chickens during the winter.

**30.**
Officer Rickets further observed "multiple roosters and hens housed together in pens which is indicative of breeding establishments."

**31.**
There is nothing illegal about breeding chickens. Romig maintained "heritage breeds" with the goal of preserving valuable poultry bloodlines. The seized birds include ancient and exotic breeds such as the Aseel Chicken and the Old English Game Chicken. These are endangered breeds that are protected from extinction by the efforts of Romig and other specialty poultry breeders.

**32.**
Officer Ricketts observed "multiple trash containers of high-quality feed on the property that ROMIG disclosed he mixes for his birds which is a behavior

indicative of a cock fighting/breeding establishment. Officers observed multiple bags of starter feed which is indicative of breeding establishments."

**33.**
Again, there is nothing illegal about breeding chickens.

**34.**
Each of the foodstuff is typical of management for any chicken breed. None of the feed ingredients found on Mr. Romig's farm are unique and none of them provide extra or special nutrition for cock fighting.

**35.**
The affidavit further stated that, "Officers observed birds at the rear of the property without proper shelter."

**36.**
Officers claimed they had probable cause to seize Mr. Romig's chickens.

**37.**
On November 22, 2019, 102 chickens were seized from Mr. Romig's farm.

**38.**
The chickens were in in demonstrably good health at the time they were seized from Mr. Romig.

**39.**
Mr. Romig turned himself in and was charged with ten counts of violating Maryland Criminal Code 10-606 (aggravated cruelty to animals) and ten counts of 10-608 (animal cruelty, cockfighting). In addition, he was charged with one count

of 10-608 (possessing instruments of cockfighting) and one count under the common law of possessing instruments of cockfighting.

**40.**

Once seized, the chickens were under the responsibility and care of the Montgomery County Police Department, Animal Services Division ("the Department"), and the Animal Matters Hearing Board.

**41.**

On November 22, 2019, Thomas Koenig, Director of Animal Services wrote a letter to Petitioner stating, "While your animal(s) is in protective custody with ASD, [Animal Services Division] during any appeal process prior to a Board decision, the animal(s) will NOT be euthanized, unless medically necessary."

**42.**

The Department and the Animal Matters Hearing Board held a hearing and/or with the assistance of Director Thomas Koenig, approved the decision to keep 102 chickens seized from Mr. Romig.

**43.**

In addition, the Board decided that the cost of housing the seized chickens was $14,000.

**44.**

The Board's decision required that Mr. Romig pay for the cost of housing the seized chickens.

**45.**

On December 9, 2019, Mr. Romig appealed the decision of the Animal Services Division and the Animal Matters Board. The appeal was sent to the Animal Services Division and to Director Koenig.

**46.**

In his December 9, 2019 appeal, Mr. Romig appealed the Animal Services' Division and Director Koenig's decision to seize 102 chickens, the determination by the Board that the cost of housing the chickens was $14,000, and Mr. Romig sought a waiver of the cost of providing care for the seized animals.

**47.**

On January 21, 2020, Mr. Romig filed Petitioner's Request for Judicial Review with the Circuit Court of Montgomery County. Mr. Romig had two requests. First, Mr. Romig requested that the court reverse the Department and the Animal Hearing Board's decision and order the return of Mr. Romig's chickens.

**48.**

Second, pursuant to MD Rule 7-205, Mr. Romig requested that the court bar the Department and the Animal Hearings Board from taking any action that would harm Mr. Romig's chickens until after a hearing on the merits of this case.

**49.**

However, during this time, the Department and the Animal Hearing Board ordered the execution of all of the surviving chickens. This was instead of asking Mr. Romig to retake control of the chickens.

**50.**

Sometime in December or January of 2020, almost all of the chickens seized from Mr. Romig died, either because they were euthanized or because the chickens died of starvation.

**51.**
As noted above, the chickens were in demonstrably good health when the Department and the Animal Hearing Board seized the chickens from Mr. Romig.

**52.**
Once the Department and the Animal Hearing Board took possession of the chickens, the health of the chickens appeared to have deteriorated due to the poor treatment the chickens suffered under the Board's supervision.

**53.**
According to the Final Laboratory Report, Frederick Animal Health Laboratory, January 9, 2020, p. 2, the seized chickens' "[s]uspected cause of death is starvation."

**54.**
At the sentencing hearing in the criminal case, the Montgomery County States Attorney's Office conceded, upon questioning by the presiding judge, that the decision was made to euthanize the animals for financial, rather than medical reasons. Some of the chickens "had to [be] euthanize[d] because they were unable to pay and care for those particular animals." *State v. Romig, Criminal No.* 136875C, Plea Hearing and Sentencing Transcript, p. 30.

**55.**

Of the twenty-two counts he was charged with, Mr. Romig pled not guilty to twenty-one counts. The charges were dismissed as to those twenty-one counts on October 26, 2020.

## COUNT I
### SECTION 1983 VIOLATION OF DUE PROCESS PURSUANT TO THE 14TH AMENDMENT OF THE U.S. CONSTITUTION

**56.**
The allegations of the above paragraphs 1-55 are re-alleged and incorporated by reference as if fully set forth herein.

**57.**
Defendant's enforcement of Maryland Codes section 10-615(b)(1) and 10-606(b) and Montgomery County Code, 5-301, violated Mr. Romig's due process rights under the Fourteenth Amendment to the United States Constitution.

**58.**
Maryland Code sections 10-615(b)(1) and 10-606(b) define animal cruelty in such a vague manner that they fail to adequately limit an officer's discretion when enforcing the statutes or to place a defendant on notice as to what conduct is prohibited. Further, neither section requires that a veterinarian determine whether an animal is being cruelly treated before officers may seize an owner's animals.

**59.**
Defendant also violated Mr. Romig's procedural due process rights when they euthanized Mr. Romig's animals without first providing a hearing

## COUNT II
### DECLARATORY AND INJUNCITVE RELIEF
### SECTION 1983 VIOLATION OF DUE PROCESS PURSUANT TO THE 14TH

## AMENDMENT OF THE U.S. CONSTITUTION

**60.**

The allegations of the above paragraphs 1-55 are re-alleged and incorporated by reference as if fully set forth herein.

**61.**

Maryland Code sections 10-615 and 10-606 and Montgomery County Code section 5-301 are unconstitutional because they fail to provide adequate procedural due process under the Fourteenth Amendment to the United States Constitution. Both Maryland Code section 10-615(b)(1) and 10-606(b) fail to provide adequate due process because they are vague and fail to place a person on notice of what conduct is prohibited or to sufficiently limit an officer's discretion when enforcing the law. Further, Maryland Code section 10-615(b)(1), permitting the state to seize animals, together with Montgomery County Code section 5-301 violate procedural due process because they permit the state to euthanize animals without first providing a hearing before this final deprivation of property.

**62.**

Mr. Romig continues to suffer an ongoing injury and harm because (either he is prohibited from owning animals in the future or he continues to own animals and is at risk that these animals will be seized from him again in the future).

**63.**

Based on the facts incorporated to support this Count, Mr. Romig requests that this Court both declare the statutes at issue as unconstitutional while also enjoining the Defendant from enforcement actions pursuant to said statutes. The harm being caused is ongoing while causing non-monetary irreparable harm.

### COUNT III
### SECTION 1983 VIOLATION OF DUE PROCESS PURSUANT TO THE 8TH AMENDMENT OF THE U.S. CONSTITUTION

**64.**
The allegations of the above paragraphs 1-55 are re-alleged and incorporated by reference as if fully set forth herein.

**65.**
The Animal Hearing Matters Board requires that the owner of an impounded animal pay a fee for the cost of boarding animals. This administrative rule does not consider an owner's ability to pay. And the rule does not permit the fee to be forfeited if an owner is found not guilty.

**66.**
Any costs incurred to cover the costs of animal care during the pendency of a civil asset or criminal prosecution violates the Excessive Fines provision of the Eighth Amendment to the United States Constitution.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request:

(a) Order summons to be issued for service of process upon all Defendant;

(b) Order that a jury determine all issues not settled by this Court;

(c) Declare that Maryland Code section 10-606(b) and 10-615 and Montgomery and Montgomery County Code section 5-301 violate the Fourteenth Amendment to the United States Constitution.

(d) Declare that the imposition of fees by the Animal Matters Hearing Board to pay for the boarding of animals violates the Eighth Amendment to the United States Constitution.

(e) Order Defendant to pay all reasonable costs, compensatory damages, and attorney's fees pursuant to 42 U.S.C. § 1988, to Plaintiff;

(f) That Plaintiff receives such other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of September 2021,

/s/ John M. Shoreman
John Shoreman (Bar / Pro hac vice)

**McFadden & Shoreman LLC**
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 772-3188/ Fax: (202) 204-8610
Email: jmshoreman@verizon.net
*Counsel for Plaintiff*